**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

JAMES E JOHNSON AND
THERESA JOHNSON                                                                                  PLAINTIFFS


V.                                                                                                       NO. 1:07CV291-M-D


MICHAELS OF OREGON COMPANY,
BUSHNELL HOLDINGS, INC.
AND JOHN DOES 1-5                                                                               DEFENDANTS


**ORDER**

This cause comes before the court on defendants' motion for summary judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff James E. Johnson has responded in opposition to the motion,[1] and the court, having considered the memoranda and submissions of the parties, concludes that the motion is not well taken and should be denied.

This is an express warranty action in which plaintiff, a former Aberdeen police officer, alleges that a pistol holster which he purchased did not conform to warranties made by its manufacturer. In particular, plaintiff alleges that the Uncle Mike's brand PRO-3 model duty holster manufactured by defendant Michaels of Oregon Company ("Michaels") did not conform to representations made in advertisements regarding the difficulty which a suspect would encounter in removing a pistol from it. The holster's qualities in this regard were tragically

---

[1] Plaintiff's wife Theresa has also filed a loss of consortium claim, but, for the sake of simplicity, the term "plaintiff" shall refer to James alone.
  This court's references to "defendants" notwithstanding, there is essentially only one defendant in this case, inasmuch as defendant Bushnell Holdings, Inc. is merely the parent holding company of defendant Michaels.

1

tested on September 25, 2004, when a DUI suspect named Jeremy Davis managed to remove plaintiff's pistol and fire a round into his back, leaving him paralyzed from the waist down. Plaintiff alleges that, during the struggle between himself and Davis, it took Davis "less than five seconds" to retrieve the pistol from his holster, a time period which plaintiff alleges to be unreasonably short. Plaintiff filed the instant action in state court on September 11, 2007, and the case was timely removed to this court.

Defendants have presently moved for summary judgment, contending that there is no genuine issue of material fact regarding their potential liability in this case and that they are entitled to judgment as a matter of law. While plaintiff originally asserted implied warranty claims in his complaint, he has only submitted arguments contesting defendants' motion for summary judgment as to his express warranty claims. In seeking summary judgment, defendants argue that plaintiff's express warranty claims fail due to a lack of proof that he either read or relied upon any express warranty which they made. Until recently, there would have been little doubt that a plaintiff could not maintain an express warranty action under Mississippi law based upon a representation that he neither read nor heard. In *Palmer v. Volkswagen of America, Inc.*, 904 So.2d 1077, 1084 (Miss. 2005), for example, the Mississippi Supreme Court held that "[t]he presence or absence of anything in an unread owner's manual simply cannot proximately cause a plaintiff's damages." Likewise, the Supreme Court observed in the 1963 decision of *Foster v. Copiah County Co-op.*, 246 Miss. 218, 148 So.2d 702, 707 (1963) that "[i]f a statement was unknown to the buyer at the time the sale was completed, it is obvious that there can be ... [no] detrimental reliance." Consistent with this approach, the Mississippi Products Liability Act expressly requires that an express warranty plaintiff prove that he "justifiably relied" upon an

2

express warranty in "electing to use the product." *See* Miss. Code. Ann. § 11-1-63(a)(4).

The plaintiff's burden of proof in an express warranty action was greatly reduced by the Mississippi Supreme Court in its 2006 decision of *Forbes v. General Motors Corp.*, 935 So.2d 869 (Miss. 2006). *Forbes* was an express warranty action involving injuries sustained by the plaintiff when an air bag in his vehicle failed to deploy. In reversing a directed verdict by the trial court, the Supreme Court in *Forbes* concluded that the defendant could be held liable for a breach of an express warranty in the vehicle owner's manual that the air bag would deploy in a collision that was "hard enough." *Forbes*, 935 So.2d at 876-78. The Supreme Court held that potential liability existed in this regard even though the plaintiff had never read the owner's manual, since (1) it was very important to plaintiff to buy a car that had an air bag, and (2) the salesman, although not a representative of the manufacturer, conveyed the express warranty to plaintiff by representing that the car had an air bag. *Id.* In this case, as in *Forbes*, there is no evidence that the plaintiff heard or read any representation from defendant. Plaintiff testified in his deposition that he heard of the holster's weapon retention qualities from fellow police officers, and this is similar to the proof in *Forbes*, where the plaintiff heard the relevant representations from a salesman who was not an agent for the manufacturer. As in *Forbes*, there is no evidence that plaintiff's fellow officers made their alleged statements after having read advertisements, owner manuals, or any other representations from defendant.

While plaintiff's proof of causation in this case is not particularly strong, it is also apparent that *Forbes* establishes a very forgiving causation standard for express warranty plaintiffs, and the court is required to apply this authority. The court would also note that the proof of causation here is stronger than that in *Forbes* in important respects. In *Forbes*, the

3

manufacturer's warranty that the air bag would deploy in a collision that was "hard enough" was buried in an unread owner's manual, and there is no indication that the warranty was used in the marketing of the vehicle. In this case, by contrast, it is apparent that the alleged weapon retention qualities of the PRO-3 holster was a central feature of the product which defendants used to market it to consumers.

In support of his claims, plaintiff has attached a 2002 advertisement in which defendants praise the weapon retention qualities of the PRO-3 holster in the following language:

### Hard to Grab, Easy to Draw

> The emphasis on weapon retention in duty holsters is greater today than ever before, but this vital need to protect the gun must be balanced with the officer's ability to draw the weapon efficiently. The Pro-3 duty holster positively locks the gun to make snatching extremely difficult from the front, rear, top or side. Yet with a swift, simple motion, the officer can release the thumb break and draw the gun cleanly without the need to release any complicated system of snaps and straps.

It is thus apparent that defendants' advertisement included specific representations that it would be "extremely difficult" to grab a weapon from the holster. The issue of causation is closely intertwined with considerations of fairness, since the law recognizes that it would be unfair to hold defendants liable for consequences of their acts which are remote and could not be anticipated. In the court's view, a manufacturer who places an advertisement into the public domain which singles out a specific attribute of their product for praise can fully expect that consumers will read that advertisement and relay the contents thereof to friends and associates. Indeed, creating such a "buzz" about a product is the very purpose of such advertising.

The proof of causation here is stronger than that in *Forbes* in another important respect. As noted previously, the salesman in *Forbes* merely told the plaintiff that the vehicle had an air

4

bag, and he therefore did not accurately relay the contents of the warranty in the owner's manual that the air bag would deploy if a collision was "hard enough." In this case, by contrast, plaintiff heard representations from his fellow officers which closely tracked that of the advertisement above. Plaintiff testified as follows regarding the PRO-3 holster's reputation among his fellow officers:

> Q: Tell me what you were told [by fellow officers].
> A: That it would be - well I guess, it would be almost impossible. I can't remember the exact words that I was told, but I was told it was extremely hard, I think, to draw it, which I have had other officers, just in playing, try to take it, more than once.

In seeking summary judgment, defendant seizes upon differences in the language it used in its advertisement and that used in plaintiff's testimony, but it is clear that plaintiff's recollection of being told that it was "extremely hard" to grab a weapon from the holster corresponds closely to the "extremely difficult" language used in defendants' advertisement. Without question, the similarity between the respective representations is much closer here than was the case in *Forbes*. It is true that plaintiff provided rather vague testimony when asked in his deposition why he purchased the holster in question, and defendants argue that this demonstrates a lack of proof that he relied upon his fellow officers' representations in electing to purchase it. Specifically, plaintiff testified as follows in his deposition:

> Q: Have you ever- I think I asked you this, but I want to make sure. Did you buy the Uncle Mike's holster because of something you had read about?
> A: I had heard about it. The other officers had it, and I read it and was looking at it in the Goz catalog.

When asked earlier in his deposition why he had bought the PRO-3 holster, plaintiff responded that he had heard "[t]hat they were good holsters."

It would clearly be preferable for plaintiff to have specifically testified that it was the

reputed weapon retention qualities of the PRO-3 holster which made him buy it. Nevertheless, the plaintiff's previously quoted testimony regarding the holster's reputation for weapon retention suggests that representations regarding that quality were at least part of what made him purchase it. Indeed, the very purpose of a police duty holster is to permit easy drawing by the officer while preventing "snatching" by a suspect, and it is therefore not a stretch to assume that this is the case. This court is not inclined to grant summary judgment merely because plaintiff answered defendants' questions in broad terms, particularly since counsel for defendants could have inquired more extensively into this matter at the deposition if he had wished to do so. Indeed, at one point in his deposition, plaintiff expressed a desire to start the deposition over because he was feeling more "awake" than before. Counsel for defendants demurred, stating "I suspect you have better things to do this afternoon than rehash what we just did." It thus appears that counsel for defendants was pleased with the vague responses he had received from plaintiff to that point and was not interested in obtaining further clarification in this regard.

The court does agree with defendants that plaintiff's evidence in this case is not particularly strong, and, were it not for *Forbes*, it would likely grant the motion for summary judgment. The fact remains, however, that *Forbes* found that potential liability existed against a manufacturer based upon a theory of causation which is considerably more tenuous than the one in this case. This court's responsibility is simply to apply Mississippi law in this case, and *Forbes* sets forth the parameters of that law in express warranty cases.

Defendants also take issue with plaintiff's lack of expert testimony, but *Forbes* likewise provides helpful authority for plaintiff in this context. Indeed, the Supreme Court held in *Forbes* that potential liability existed against the manufacturer even though the plaintiff lacked an expert

6

qualified to testify regarding air bag manufacture or design. *Id.* at 877. In so holding, the Court indicated that more lenient requirements for expert testimony applied in express warranty cases involving allegations of a "failure to conform to a factual representation upon which the claimant justifiably relied." *Id.* The Supreme Court thus distinguished more stringent case law cited by the defendant in *Forbes*, which it found to involve more complex manufacturing and design defect claims. The Supreme Court in *Forbes* also cited federal authority for the proposition that the plaintiff "need only show that the product did not live up to its warranty" in express warranty cases and indicated that this lessened factual burden justified less stringent standards for expert witness testimony. *Id., citing Albritton v. Coleman Co.*, 813 F. Supp. 450, 455 (S.D. Miss.1992)

It is true that the plaintiff in *Forbes* did provide some expert testimony as to liability, and the court would likely require the same in this case were it not for one important fact. Plaintiff notes that there is a videotape of the shooting incident in this case, and he has expressed an intention to let the jurors view the videotape and "decide for themselves" whether defendants' representations regarding the weapon retention qualities of the PRO-3 pistol were met. Were it not for this video evidence, the court would almost certainly require that plaintiff produce some expert testimony regarding liability, most likely in the form of controlled product testing. It can certainly be argued, however, that the best possible test of the weapon retention qualities of the holster in this case is its performance in a situation where an actual suspect is attempting to grab a weapon from the holster.

As noted previously, plaintiff testified that he had done some informal testing of the weapon retention qualities of the holster with fellow officers "just in playing." In the court's view, such informal testing or horseplay does not compare to a situation where an officer and a

7

suspect are engaged in a grim life-or-death struggle for a pistol. Likewise, the court would have less confidence in the reliability of product testing performed by an expert hired by either party than in the actual performance of the holster in the emergency situation in this case. It may be that the video evidence in this case is not sufficiently definitive to allow a jury to decide whether the holster performed as represented, but this is an issue for the jury, rather than for this court. Mississippi law holds that expert testimony is not required regarding matters that can be understood as a matter of "common sense and practical experience." *Coleman v. Rice*, 706 So. 2d 696, 698 (Miss. 1997). In the court's view, the issues in this case are sufficiently simple that jurors can view the video evidence and determine for themselves whether defendants complied with their express warranty.

Defendants represented that it was "extremely difficult" for a suspect to snatch a weapon from their holster, and this is a warranty which is very easy for a jury to understand. In addition to the video evidence, the court will be inclined to grant a request from either party, to the extent allowed by the rules of evidence, that the jurors be allowed to examine and inspect the PRO-3 holster themselves and perhaps even perform their own informal product testing so that they may reach an informed verdict in this case. While it is not clear that plaintiff will be able to sustain his burden of proof in this case, the court does conclude that he has submitted sufficient evidence to establish genuine fact issues regarding defendants' potential liability in this case. Defendants' motion for summary judgment will therefore be denied.[2]

---

[2] Defendants have filed a motion in limine [54-1] seeking the exclusion of the statements of plaintiff's fellow officers, as well as their own advertisement, on hearsay grounds. This motion will be denied, inasmuch as this evidence is not being introduced for the truth of the matter asserted. That is, plaintiff is not attempting to prove that the PRO-3 holster actually had good weapon retention qualities, but merely that representations were made that it did.

In light of the foregoing, it is ordered that defendants' motion for summary judgment [42-1] is denied.

So ordered, this the 23rd day of February, 2009.

    /s/ Michael P. Mills
CHIEF JUDGE
U.S. DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI

---

Defendants have also filed a motion to strike [49-1] which will be dismissed as moot in light of a revised exhibit filed by plaintiff.